FILED
United States Court of Appeals
Tenth Circuit

July 23, 2013

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

WILDEARTH GUARDIANS,

        Petitioner,

    v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; LISA
JACKSON, Administrator, U.S. EPA,

        Respondents.

No. 11-9559

---

PUBLIC SERVICE COMPANY OF
COLORADO, d/b/a Xcel Energy, Inc.,

        Intervenor.

---

**ON PETITION FOR REVIEW OF AN ORDER OF THE UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY
EPA No. VIII-2010-XX**

---

Ashley D. Wilmes of WildEarth Guardians, Boulder, Colorado, for Petitioner.

Christina L. Richmond, United States Department of Justice, Environmental Defense
Section, Washington D.C. (Elyana Sutin, U.S. EPA, Region 8, Office of Regional
Counsel, and Richard Vetter, U.S. EPA, Office of General Counsel, of counsel; Ignacia S.
Moreno, Assistant Attorney General, Environmental and Natural Resources Division,
with her on the briefs) for Respondents.

A. Kent Mayo (Michael Heister with him on the brief) of Baker Botts L.L.P.,
Washington, D.C., for Intervenor.

---

Before **O'BRIEN, McKAY,** and **TYMKOVICH,** Circuit Judges.

**McKAY**, Circuit Judge.

Petitioner WildEarth Guardians seeks review of an order of the Environmental Protection Agency denying in part Petitioner's petition for an objection to a Title V operating permit issued by the Colorado Department of Public Health and Environment (CDPHE) to Intervenor Public Service Company of Colorado, d/b/a Xcel Energy, for its coal-fired power station located in Morgan County, Colorado. In its petition for an objection, Petitioner argued, among other things, that the permit needed to include a plan to bring the power station into compliance with the Clean Air Act's Prevention of Significant Deterioration requirements. Petitioner contended these PSD requirements, which apply to the construction or "major modification" of a stationary source of air pollution, 40 C.F.R. § 51.166(a)(7)(ii), had been triggered when the station underwent major modifications in 1994, 1997, and possibly other years. For support, Petitioner relied in part on a Notice of Violation issued to Intervenor by the EPA in 2002. However, the EPA denied Petitioner's petition for an objection on this ground, holding that the NOV was insufficient to demonstrate noncompliance with the Clean Air Act and that Petitioner's additional evidence also failed to demonstrate a violation. The EPA further held the state agency had adequately responded to Petitioner's comments regarding the PSD requirements before it issued the permit. The EPA thus denied the petition for an objection on this ground as well. Petitioner now seeks review of the EPA's denial of the

petition on these two grounds.[1]

## I.

Under Title V of the Clean Air Act, a "major source" of air pollution, such as the power station at issue in this case, must obtain an operating permit from the applicable state agency. *See* 42 U.S.C. § 7661a. After providing the public with an opportunity to comment on a proposed permit, the state agency submits the permit to the EPA, which has 45 days to review it. *See Sierra Club v. U.S. EPA*, 557 F.3d 401, 403 (6th Cir. 2000) (citing 42 U.S.C. §§ 7661a(b)(6), 7661d(b)(1)). If the EPA does not file a written objection during this time period, "any person may petition the Administrator within 60 days after the expiration of the 45-day review period." 42 U.S.C. § 7661d(b)(2). "The petition shall be based only on objections to the permit that were raised with reasonable specificity during the public comment period provided by the permitting agency . . . ." *Id.* The EPA has 60 days to respond to the petition, and "shall issue an objection within such period if the petitioner demonstrates to the [agency] that the permit is not in compliance with the requirements of [the Clean Air Act], including the requirements of the applicable [state] implementation plan." *Id.* "Any denial of such petition shall be subject to judicial review under section 7607 of this title." *Id.*

In 2009, the applicable state agency in this case, CDPHE, published a proposed

---

[1] The EPA granted Petitioner's petition to object on two grounds that are not at issue in this appeal. It denied the petition on all other grounds, only two of which are at issue on appeal.

renewal permit for Intervenor's Pawnee power station in Morgan County, Colorado. Petitioner submitted comments on the proposed permit. Among other things, Petitioner raised a concern regarding the proposed permit's alleged failure to include a plan to bring the power station into compliance with the Clean Air Act's PSD requirements, as implemented in the Colorado State Implementation Plan. Petitioner contended these PSD requirements were triggered when the power station "underwent major modifications in 1994 and 1997 without obtaining the required PSD permit." (J.A. at 2.) For support, Petitioner relied on a Notice of Violation the EPA issued to Intervenor in 2002, which included the following allegations:

11. Xcel has made "major modifications" of the Pawnee and Comanche Stations as defined by both 40 CFR §52.21 and Colorado SIP Rules . . . .
    i) The major modifications at its Pawnee Station include but are not limited to the following physical or operational changes, alone or in combination: a reheater redesign and replacement in 1994, and a redesign and upgrade of the condenser tubes in 1997 to regain lost generation due to condenser tube failures.
    . . . .

12. Each of the modifications resulted in a net significant increase in emissions for $SO_2$, $NO_x$, and/or PM as defined by 40 CFR §§52.21(b)(3) and (23) and Colorado SIP Rules . . . .

13. For each of the modifications identified in 11 above, Xcel did not obtain a PSD permit pursuant to 40 CFR §52.21 and Colorado SIP Rules . . . .

. . . .

17. Therefore, Xcel violated and continues to violate Clean Air Act, Part C: Prevention of Significant Deterioration of Air Quality ("PSD"), 42 U.S.C. §§7470 to 7492, and the permitting requirements of Colorado Air Quality

-4-

> Control Commission Regulation No. 3, Part B, IV.D.3 and 40 C.F.R.[ ] §52.21, by constructing and operating modifications at the Pawnee Station . . . without the necessary permits and by constructing and operating without the application of BACT required by the Colorado SIP.

(J.A. at 173-74.)

Petitioner contended this Notice of Violation demonstrated the Pawnee power station was not in compliance with PSD requirements, and thus the Title V Permit needed to include a PSD compliance plan. Petitioner argued "[t]he 2002 NOV is sufficient to demonstrate noncompliance with PSD for the purposes of a Title V Permit," relying for support on a Second Circuit case that found a state agency notice of violation sufficient to demonstrate noncompliance under Title V. (J.A. at 2 (citing *N.Y. Pub. Interest Research Grp. v. Johnson*, 427 F.3d 172 (2d Cir. 2005)).)

Petitioner further argued that even if the NOV was insufficient on its own to demonstrate noncompliance with established PSD requirements, other documents helped demonstrate that Intervenor made major modifications at the Pawnee power station, thus triggering PSD requirements. For support, Petitioner submitted the following: (1) an Xcel Capital Project Summary Sheet stating "[t]he top bank plus all 256 reheater assemblies in the two middle banks will be replaced during the planned ten-week outage in 1994" (J.A. at 177); (2) a document stating that $4.5 million in emergency funding was allocated for new condenser tubes to be installed in early 1997 (J.A. at 183); (3) a document showing planned outages for "major turbine overhaul (720 hours or longer)" in late 1994 and early 1997, plus a planned outage for a "major boiler overhaul (720 hours

or longer)" in 1998 (J.A. at 179 (capitalization standardized)); (4) documents reflecting limited or zero hours of operation for certain months in late 1994 and early 1997 (J.A. at 181, 187); (5) another document showing planned outages for a "major turbine overhaul (720 hours or longer)" in 1989 and a "major boiler overhaul (720 hours or longer)" in 1990 (J.A. at 189 (capitalization standardized)); and (6) a document showing a planned outage for a "major boiler overhaul (720 hours or longer)" in 2000 (J.A. at 191 (capitalization standardized)). Petitioner contended these documents demonstrated that major modifications occurred at the Pawnee station during the 1990s. Petitioner further argued these modifications "clearly resulted in significant emissions increases," based on a table showing annual emissions at the Pawnee station from 1995 through 2007. (J.A. at 4-5.) Petitioner argued the documents at least raised a "valid suspicion of noncompliance with PSD," giving the state agency "a minimum responsibility to respond." (J.A. at 5.)

In response, CDPHE stated it considered the NOV to be "only an allegation of a violation and not a determination that violations actually occurred." (J.A. at 17.) CDPHE also noted that Intervenor and the EPA had disagreed as to whether a major modification had occurred, and the EPA had not initiated any related enforcement action since issuing the NOV seven years previously. Citing for support to an EPA order and a Colorado state court case, CDPHE concluded that the NOV alone did not demonstrate noncompliance with PSD. As for the other documents submitted by Petitioner, CDPHE concluded that these documents did not prove a major modification had occurred. The mere fact that the word "major" was used in the phrases "major turbine overhaul" and "major boiler

-6-

overhaul" did not demonstrate that "major modifications" had occurred for purposes of PSD requirements. (J.A. at 21.) "A major modification is a physical change or change in the method of operation, or addition to, a major stationary source that would result in a significant net emissions increase using the actual to potential test." (J.A. at 21.) Moreover, CDPHE noted that "routine maintenance, repair and replacement" is not considered to be a modification for purposes of this definition, and the fact that turbine and boiler overhauls "have occurred frequently over the time periods addressed in the exhibits support[s] the inference that these activities are routine." (J.A. at 21.) CDPHE thus concluded that Petitioner had not shown the PSD requirements had been triggered.

After making certain other revisions not relevant to this appeal, CDPHE submitted the proposed final permit to the EPA, which did not file any written objections during its 45-day review period. Petitioner then petitioned for an objection to the issuance of the permit. In its petition, Petitioner raised many of the same grounds it had raised in its comments to CDPHE, including its concern about PSD compliance. Petitioner reiterated its argument that the NOV was sufficient to demonstrate noncompliance with PSD requirements for purposes of objecting to the Title V Permit. Petitioner also relied again on the documents regarding the 1994 reheater redesign project, the 1997 upgrade of condenser tubes, various periods of planned outages for "major turbine" and "major boiler" overhauls, the limited or zero hours of operation reported in late 1994 and early 1997, and the table showing annual emissions amounts. Petitioner argued that "at a minimum the NOV shows clear evidence of a valid suspicion of noncompliance," which

the additional documents confirmed.  (J.A. at 45.)  Petitioner further argued that CDPHE

had not complied with its responsibility to respond to significant comments regarding

noncompliance, since CDPHE's response "neither provides nor points to any explanation,

information, or analysis demonstrating that the reheater design and replacement and

condenser tube upgrades did not constitute physical changes or changes in the methods of

operation and/or lead to significant net emissions increases."  (J.A. at 47-48.)  The state

agency's response "fail[ed] to demonstrate that the reheater redesign and replacement and

condenser tube upgrades did not constitute major modifications of the Pawnee coal-fired

power station."  (J.A. at 48.)  Petitioner therefore argued the EPA "must object to the

issuance of the Title V Permit on the basis of [CDPHE's] failure to adequately respond to

significant comments presented by WildEarth Guardians."  (J.A. at 49.)

The EPA rejected these arguments.  The EPA explained that "the issuance of an

NOV and reference to information contained therein are not sufficient to satisfy the

demonstration requirement under section 505(b)(2)."  (J.A. at 198.)  The EPA then

concluded that Petitioner had "failed to provide sufficient additional information to

'demonstrate' that PSD applies."  (J.A. at 200.)  The agency explained:

> As discussed above, . . . the test for PSD applicability is whether there has
> been a major modification under the Colorado SIP.  To determine whether a
> net emissions increase would occur, the Colorado SIP requires:  (1) a
> determination of the actual emissions increase that would result from a
> particular physical change or change in the method of operation; and (2) a
> determination of any other increases and decreases in actual emissions at
> the source that are contemporaneous with the particular change and are
> otherwise creditable.  In responding to Petitioner's comment on the draft
> title V permit in this regard, CDPHE concluded that the record was

-8-

insufficient to indicate a major modification occurred. Petitioner has not submitted information sufficient to demonstrate that CDPHE was incorrect in this regard. Specifically, for example, the emissions information in the petition does not demonstrate the existence of a significant net emissions increase since it fails to show the increase in actual emissions from the reheater design and replacement, identify the contemporaneous period, determine any other contemporaneous increases and decreases in emissions, or determine whether the contemporaneous increases and decreases were credible.

(J.A. at 200-01 (citation omitted).) Because Petitioner had not demonstrated that the test for PSD applicability had been met, the EPA denied the petition on this issue. As for CDPHE's response to Petitioner's comments, the EPA concluded that CDPHE had given an adequate response since the state agency explained the test for determining whether a major modification has occurred, explained that the use of the word "major" in Intervenor's planned outage reports was not determinative on this point, noted that the EPA and Intervenor had disagreed on the facts at issue in the NOV, and stated that an NOV is not conclusive evidence of a violation. The EPA accordingly denied Petitioner's petition on this ground as well.

Petitioner now seeks review of these decisions, arguing again that the NOV was sufficient in itself to demonstrate PSD noncompliance, that the other documents further demonstrate noncompliance, and that CDPHE failed to adequately respond to Petitioner's comments.

## II.

Our review of the EPA's order is governed by the Administrative Procedure Act, and we accordingly will not set aside the agency's decision "unless it is procedurally

-9-

defective, arbitrary or capricious in substance, or manifestly contrary to the statute." *Ariz. Pub. Serv. Co. v. U.S. EPA*, 562 F.3d 1116, 1122 (10th Cir. 2009) (internal quotation marks omitted).[2] "Under the arbitrary or capricious standard, we must determine whether the agency considered the relevant data and rationally explained its decision." *Id.*

> Agency action is arbitrary or capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Id.* at 1123 (internal quotation marks omitted).

As discussed above, the EPA must issue an objection if a "petitioner demonstrates to the [agency] that the permit is not in compliance with the requirements of [the Clean Air Act], including the requirements of the applicable [state] implementation plan." 42 U.S.C. § 7661d(b)(2). A central dispute in this case is the question of what is required for a petitioner to "demonstrate" noncompliance. To resolve this dispute, we must first consider whether the agency's interpretation of this requirement is entitled to any deference.

To the extent a statute "speaks clearly to the precise question at issue, we must

---

[2] Petitioner argues that we should review the agency's decision de novo, citing for support to legislative history discussing how citizen suits filed under Section 304 of the Clean Air Act could be used to enforce the EPA's non-discretionary duty to object to permits that violate the Act. However, whatever the appropriate standard of review for such Section 304 citizen suits, this is not a Section 304 citizen suit. Rather, Petitioner filed a petition for review of the EPA's agency action under Section 307, and de novo review is not appropriate for such a petition.

give effect to the unambiguously expressed intent of Congress." *Barnhart v. Walton*, 535 U.S. 212, 217 (2002) (internal quotation marks omitted). "If, however, the statute is silent or ambiguous with respect to the specific issue," *id.* at 218 (internal quotation marks omitted), the agency's interpretation of the statute is entitled to some degree of deference, *see United States v. Mead Corp.*, 533 U.S. 218, 227-29, 234-35 (2001).

Here, Petitioner contends the EPA's interpretation is entitled to no deference because the term "demonstrate" is unambiguous. However, whether or not this term is ambiguous, deference is warranted based on the statute's silence about the specific dispute at issue here—the showing required for a petitioner to satisfy this demonstration requirement. The Clean Air Act does not set forth any factors the EPA must take into account in determining whether a petitioner has demonstrated noncompliance under § 7661d(b)(2). Indeed, the statute "does not resolve important questions that are part and parcel of the Administrator's duty to evaluate the sufficiency of a petition, for example, the type of evidence a petitioner may present and the burden of proof guiding the Administrator's evaluation of when a sufficient demonstration has occurred." *Sierra Club v. Johnson*, 541 F.3d 1257, 1266 (11th Cir. 2008) The statutory silence on these important questions suggests that "Congress has delegated to the EPA some discretion in determining whether, in its expert opinion, a petitioner has presented sufficient evidence to prove a permit violates clean air requirements," and thus some level of deference is warranted. *Id.*

The exact degree of deference we should apply is less clear. The parties both

assume that *Chevron* deference applies, to the extent any deference is warranted.

However, an argument could be made that the agency interpretation in this case, which was not the result of a formal adjudication or notice-and-comment rulemaking, should instead be reviewed under the less deferential *Skidmore* standard, under which an agency's "informal interpretations are entitled to respect, . . . but only to the extent that those interpretations have the power to persuade," *McGraw v. Barnhart*, 450 F.3d 493, 501 (10th Cir. 2006) (internal quotation marks omitted). *Cf. MacClarence v. U.S. EPA*, 596 F.3d 1123, 1131 (9th Cir. 2010) (discussing both *Chevron* and *Skidmore* deference in resolving the same issue that is before us in this case); *Sierra Club v. Johnson*, 541 F.3d at 1265 n.3 (noting that "*Chevron* deference . . . does not necessarily apply to every interpretation offered by an agency," but declining to "identify the precise level of deference in the instant matter since we are persuaded that the EPA's position would survive even the least deferential degree of review"). We need not resolve this potential issue in this case, since we conclude that the EPA's interpretation is persuasive even under *Skidmore*'s less deferential standard of review, and this interpretation would thus prevail under either standard.

Here, the EPA stated that a petitioner cannot rely solely on the existence of a previously issued NOV to demonstrate noncompliance, although an NOV may be "a relevant factor when determining whether the overall information presented by Petitioner—in light of all the factors that may be relevant—demonstrates the applicability of a requirement for the purposes of title V." (J.A. at 198-99.) "Other factors that may be

relevant in this determination include the quality of the information, whether the underlying facts are disputable, the types of defenses available to the source, and the nature of any disputed legal questions . . . ." (J.A. at 199.) The agency then explained: "If, in any particular case, these factors are relevant and Petitioner does not present information concerning them, then the EPA may find that Petitioner has failed to present sufficient information to demonstrate that the requirement is applicable." (J.A. at 199.) The agency noted that it had similarly explained in several previous Title V orders that an NOV alone is not sufficient to demonstrate noncompliance under § 7661d(b)(2). We find this interpretation of the demonstration requirement persuasive and thus defer to the agency's interpretation.

The EPA is directed to issue an NOV "[w]henever, on the basis of any information available to the Administrator, the Administrator finds that any person has violated or is in violation of any requirement or prohibition of an applicable implementation plan or permit." 42 U.S.C. § 7413(a)(1). Although this statute "talks in terms of the Administrator making a finding, it merely describes the EPA's process for leveling allegations against any party it perceives to be violating clean air requirements." *Sierra Club v. Johnson*, 541 F.3d at 1267. Thus, the statute "helps guarantee that a party receives notice of the accusations leveled against them prior to the EPA taking further enforcement action." *Id.* (citing 42 U.S.C. § 7431(a)(1)). Accordingly, an NOV "reflects the agency's first, not its last, word on the subject," marking "only the beginning of a process designed to test the accuracy of the agency's initial conclusions." *Sierra Club v.*

-13-

*EPA*, 557 F.3d at 408. "And that process may prove the opposite: The statute contemplates that litigation may disprove the agency's allegations, may disprove the reasonableness of the agency's allegations, or may result in a stalemate or settlement." *Id.* (citations omitted) (citing 42 U.S.C. §§ 7413(b)(3), 7413(g)).

If the agency were required to find that a previous NOV demonstrated noncompliance under Title V, as Petitioner suggests, "the agency would have to cling to an initial conclusion reached months or years earlier . . . based on 'any information available' to it at the time," even if further evidence had disproved the agency's initial allegations. *Id.* (quoting 42 U.S.C. § 7413(a)(1)). "Besides giving short shrift to the truth-seeking function of litigation, this interpretation could discourage the EPA from engaging in discretionary enforcement actions in the first place." *Id.* Moreover, as the Eleventh Circuit has explained:

> [Petitioner's] argument threatens to render meaningless the statutory requirement that private citizens *demonstrate* noncompliance. Had Congress intended the Administrator to object to an operating permit every time a violation notice is issued, it could have easily made that an explicit part of the Title V permit review process. It did not. Instead it chose to require private citizens to "demonstrate" a violation, and at least in this case, the agency was entitled to conclude that a mere reminder of its past actions was an insufficient demonstration.

*Sierra Club v. Johnson*, 541 F.3d at 1269 (citation omitted).

We are not persuaded by the Second Circuit's contrary conclusion that an NOV suffices to demonstrate non-compliance, *see N.Y. Pub. Interest Research Grp., Inc.*, 427 F.3d at 181-82, since this conclusion fails to adequately take into account the preliminary

-14-

nature of an NOV.  Instead, like the Sixth and Eleventh Circuits, we find the EPA's interpretation of the demonstration requirement to be persuasive and thus entitled to deference.  Nothing about the statute requires the EPA to find that a petitioner has demonstrated noncompliance simply by pointing to the existence of an NOV, and we will defer to the EPA's persuasive conclusion that an NOV alone is insufficient to meet this burden of demonstration.

Petitioner further suggests that once a petitioner has submitted evidence regarding the existence of a previously issued NOV, this creates in effect a presumption of noncompliance, which the agency must affirmatively rebut with a persuasive explanation of the reasons why it now concludes that the source is in compliance.  (*See, e.g.*, Pet'r's Opening Br. at 36 ("EPA also provides no discussion or explanation for its inconsistency. . . . Because EPA must determine whether the Petition demonstrates sufficient information, EPA failed in its affirmative duty to refute or confirm the information in the Petition."); *see also* J.A. at 47-48 (complaining that the state agency's response "neither provides nor points to any explanation, information, or analysis demonstrating that the reheater design and replacement and condenser tube upgrades did not constitute physical changes or changes in the methods of operation and/or lead to significant net emissions increases").)  However, the statutory text does not shift the burden in this manner.  The statute places the burden on the petitioner to demonstrate noncompliance, not on the agency to disprove such allegations, and we will defer to the agency's conclusion that a petitioner must affirmatively point to evidence other than an NOV in order to make this

demonstration. Petitioner further argues this conclusion places an unreasonable burden on citizen–petitioners by requiring them to provide technical information that may not be publicly available and to prove each element of the complex legal tests required to demonstrate noncompliance with PSD or other requirements. We are not persuaded, however, that it is unreasonable for the agency to require petitioners to meet a high burden of proof before they can trigger the EPA's mandatory duty to object to a Title V petition. We therefore see no error in the EPA's persuasive interpretation of the demonstration requirement.

We further conclude that the agency did not act arbitrarily or capriciously in concluding that Petitioner failed to demonstrate noncompliance in this case. The agency held that Petitioner had not demonstrated PSD noncompliance because Petitioner's evidence failed to show there had been a major modification as defined by the Colorado SIP, which requires, among other things, consideration of the actual emissions increase resulting from a particular modification, as well as "a determination of any other increases and decreases in actual emissions at the source that are contemporaneous with the particular change and are otherwise creditable." (J.A. at 200-01.) As the agency explained, Petitioner's evidence did not address key parts of this test, particularly the question of net emissions increases. The table of annual emission levels submitted by Petitioner fell far short of the proof required to demonstrate that a major modification had occurred under the Colorado SIP, and none of Petitioner's other evidence, besides the bare allegations in the 2002 NOV, addressed the question of actual emissions. Viewing

the record as a whole, we are not persuaded that the EPA acted arbitrarily or capriciously in holding that Plaintiff had not demonstrated noncompliance. Thus, under our deferential standard of review, we affirm the EPA's denial of the petition on this ground.

Finally, Petitioner argues the EPA erred in concluding that CDPHE adequately responded to Petitioner's comments during the public comment period. For support, Petitioner relies mainly on a prior EPA order where the EPA held that a state agency had failed to adequately respond to a petitioner's comments. However, the state agency's response in the previous case contained only two sentences referring vaguely to "the rules that existed at the time of each modification." (J.A. at 229.) Here, the state agency gave a much more thorough explanation in its response, and we are not persuaded that the EPA acted arbitrarily or capriciously in concluding this response was adequate. We therefore affirm the EPA's denial of the petition on this ground as well.

**III.**

For the foregoing reasons, we **AFFIRM** the EPA's order denying in part the petition to object.